UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

REBECCA LYNN DARLING,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security,

    Defendant.

No. 2:16-CV-00241-LRS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 20).

**JURISDICTION**

Rebecca Lynn Darling, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on September 17, 2012. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on November 20, 2014, before Administrative Law Judge (ALJ) Donna L. Walker. Plaintiff testified at the hearing, as did Medical Expert (ME) Marian S. Martin, Ph.D., and Vocational Expert (VE) Carly Coughlin. On January 29, 2015, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of her application for SSI benefits, Plaintiff was 20 years old, and at the time of the administrative hearing, she was 23 years old. She has a high school education and no past relevant work experience.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) rejecting Plaintiff's symptom testimony; 2) failing to properly consider and weigh medical opinion evidence; and 3) failing to determine that Plaintiff has a severe medically determinable impairment meeting Listing 12.05C in 20 C.F.R. Part 404, Subpart P, App. 1.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which

determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

///
///
///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medical impairments, those being developmental language disorder, borderline intellectual functioning, depression and social anxiety;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she has the ability to engage in entry level, unskilled work; remember locations and work-like procedures; understand and remember short and simple verbal instructions; carry out short and simple verbal instructions; would work best in jobs taught by demonstration, rather than by written instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision work in proximity to, but not in close cooperation with others; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards or neatness and cleanliness; respond to normal changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; set realistic goals or make plans independently of others; and would work best in jobs with no public contact; and

///

///

4) Plaintiff's RFC allows her to perform jobs existing in significant numbers in the national economy as identified by the VE, including hand packager, production assembler and laundry aid.

Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff underwent a psychological assessment by Gerald Gardner, Ph.D., on November 13, 2012. This was a consultative examination performed upon referral by the State of Idaho Disability Determination Services. Plaintiff denied any history of psychiatric treatment. She indicated she had depressed moods, but had never discussed that with a doctor and had never been on medicine for her moods. (AR at p. 279). She indicated she had never been "seriously suicidal." Currently, her mood was good and she stated she was not usually down or depressed. She denied feelings of helplessness or hopelessness. She indicated she gets nervous around people and suggested she would avoid talking to retail clerks. Plaintiff said her sleep was good, that her energy level depends on the day, that sometimes she was able to focus and

get things done and that "[o]ther times, she gets bored with housekeeping and does not have motivation for that." She told Dr. Gardner she had no problems with grooming or hygiene and that "[s]he cooks occasionally[,] but has difficulty reading recipes so [her boyfriend] does most of the cooking," while "[s]he is largely limited to [T]op Ramen and sandwiches." She indicated that "[s]he knows how to do all the basic housecleaning chores[,] but sometimes lacks motivation." Plaintiff has never had a driver's license and indicated she did not take driver's education due to lack of income. She told the doctor she will occasionally go places by herself and will take the bus to the library or to Wal-Mart. Plaintiff opined that she was careful with money and believes she ensures she receives the correct change. (AR at p. 280).

Plaintiff informed Dr. Gardner that she was in special education all of her life, was in speech therapy from kindergarten through the sixth grade, and graduated from the special education program at her high school. She indicated she had a few friends and hung out with the kids she met in special education classes. Plaintiff advised that she had never held a job and had never traveled independently. (AR at p. 281).

On mental status examination, Dr. Gardner observed that Plaintiff was "casually dressed in clean clothing" and "[g]rooming and hygiene appeared to be good." Plaintiff was "fully cooperative with the assessment" and her "[p]sychomotor behavior" was appropriate. Although her affect was somewhat anxious initially, she became more comfortable as the interview progressed and would smile, and in a few instances, "initiated humor." Plaintiff's thought processes were organized "with no indication of a formal thought disorder." She described some lower-level feelings of worthlessness that seemed to be chronic. Her insight appeared to be fair and she was oriented to month, date and year. She incorrectly spelled the word "world." Her memory appeared to be intact for basic personal history, she was able to recall three of three unrelated words immediately and after a five minute delay. On digit span,
///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7**

she was able to recall six digits forward and four backward, each on one of two trials. (AR at p. 281).

Dr. Gardner noted that Plaintiff was able to follow simple test instructions without apparent difficulty, denied difficulty seeing the test materials, and denied motor difficulties, none of which were apparent. Wechsler Adult Intelligence Scale IV (WAIS-IV) results established a Full Scale IQ Estimate of 76. According to Dr. Gardner:

> [Plaintiff's] test results suggest uneven abilities. Her language abilities are two standard deviations below the mean. Perceptual reasoning abilities are average. Working memory and processing speed are in the borderline range, as is her full scale composite which is less meaningful due to variation across factors.

(AR at p. 282).

Dr. Gardner diagnosed developmental language disorder and "moderate" social anxiety disorder. He noted that her Full Scale IQ Estimate fell in the borderline range and opined that "[h]er overall level functioning appears to be grossly consistent with that." (AR at p. 283).

He added the following regarding Plaintiff's functional capabilities:

> [S]he is limited to simple verbal instructions. She may learn somewhat more detailed hands-on procedures with demonstration.
>
> She appears able to attend to and persist on more concrete tasks.
>
> Socially, she is anxiously avoidant. She is likable once engaged, however. She likely would not do well in roles emphasizing outgoing or assertive behavior. She likely has some limitations tolerance of conflict (sic).
>
> She is able to make concrete adjustments to changes. She is capable of independent travel. Her avoidant patterns contribute to decreased level of adaptive functioning.
>
> These appear to be chronic patterns. She might benefit significantly from vocational rehabilitation services. She tells me she has not had those.

///
///
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

> She probably is capable of rudimentary money management. Given her limitations in arithmetic and her likely limitations in assertiveness, however, she would best have a payee.

(AR at p. 283).

Shortly after Dr. Gardner's examination, on November 21, 2012, a state agency physician, Michael J. Dennis, Ph.D., reviewed the record, including Dr. Gardner's report, and concluded the Plaintiff retained "capacity for simple unskilled work activity with reduced public interactions." He noted that Plaintiff had no reported medications or treatment records, that she had never worked, had no history of mental health admissions, and had not sought mental health care. (AR at p. 77).

On February 12, 2013, another state agency physician, Mack Stephenson, Ph.D., reviewed the extant record and concluded that Plaintiff's judgment was intact, her insight was fair, she would be able to make concrete adjustments to change, she was capable of independent travel, and she "would benefit from routine, simple activity where she knows exactly what is expected of her." He concluded that Plaintiff was limited to simple verbal instructions, that she might learn somewhat more detailed hands-on procedures with demonstration, and that she appeared able to attend to and persist in more concrete tasks. (AR at p. 88).

On April 25, 2013, Plaintiff was psychologically evaluated by W. Scott Mabee, Ph.D. This evaluation was done at the behest of the Washington State Department of Social and Health Services (DSHS). Dr. Mabee noted there were no records available for him to review and so presumably, he did not see the results from Dr. Gardner's consultative examination. With regard to self-injury behavior/suicide attempts, Dr. Mabee reported "couple times/6-7x, last: one month ago after a relationship ended." Dr. Mabee noted there had been no psychiatric hospitalizations, no mental health counseling, and no psychotropic medications prescribed for the Plaintiff. Dr. Mabee also noted the Plaintiff had not repeated any grades and did not have any behavior problems during her school years. (AR at p. 370).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9**

Dr. Mabee administered an MMPI (Minnesota Multiphasic Personality Inventory) Test to the Plaintiff. An elevated F-r scale and T-score of 111 indicated "an invalid profile due to over reporting psychopathology" and her profile could not be interpreted "as her scores are likely an exaggeration of her current psychological functioning." (AR at p. 371).

Plaintiff was also administered the WAIS-IV by Dr. Mabee. Her Full Scale IQ Estimate this time was 69. After undergoing this assessment, Plaintiff told Dr. Mabee she had undergone the same assessment three to four months earlier. As such, according to Dr. Mabee, "[d]ue to practice effect, her current scores may be an inflated view of her cognitive abilities." (AR at p. 371). Had Dr. Mabee been aware of Dr. Gardner's WAIS-IV results, he would have known this to not be true as Dr. Gardner's Full Scale IQ Estimate of 76 was higher than Dr. Mabee's estimate. Dr. Mabee's Full Scale IQ Estimate of 69 was not "an inflated view" of Plaintiff's cognitive abilities compared to Dr. Gardner's Full Scale IQ Estimate of 76. According to Dr. Mabee:

> [Plaintiff's] overall abilities are in the extremely low range. A statistically significant difference between her Verbal Comprehension and Perceptual Reasoning scores suggest her non-verbal abilities are relatively better than her verbal skills. She will demonstrate severe problems with manipulating information and moderate to severe difficulty with processing information quickly. Her subtests suggest a relative strength in non-verbal concept formation and a relative weakness in abstract reasoning.

(AR at p. 371).

Finally, Dr. Mabee administered the Wechsler Memory Scale (WMS)-IV test to the Plaintiff to assess her memory skills. Based on those test results, the doctor opined that:

> [Plaintiff] will demonstrate severe problems with immediate and delayed retrieval of learned information. She will struggle with both verbal and visual presented information. She will need to

///
///
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

> have information repeated to her multiple times in order for her to remember information for longer periods of time.

(AR at p. 371).

Dr. Mabee diagnosed Plaintiff with "Dysthymic Disorder, Early Onset" and "Mental Retardation-Mild Severity Dependent Features." (AR at p. 372). He opined that Plaintiff would have "marked" (very significant) limitations in understanding, remembering, and persisting in tasks by following detailed instructions, learning new tasks, making simple work-related decisions, and in setting realistic goals and planning independently. (AR at p. 373). He opined that the duration of her impairment would be 15-18 months, that vocational or training services would minimize or eliminate barriers to employment, that mental health counseling could improve coping skills, and that appropriate medication management might alleviate the severity of Plaintiff's psychological symptoms. (AR at p. 373).

On May 13, 2013, Steven Johansen, Ph.D., completed a "Review of Medical Evidence" for DSHS. He indicated that Plaintiff's impairments were supported by medical evidence:

> 21-year-old female presenting with academic difficulties as evidenced by provided school district IEP [Individual Education Plan] indicating reading/math/writing disability; intelligence testing at age 8 rendered FSIQ = 90. However, current evaluation contains more recent adult intelligence testing (WAIS-IV) rendering FSIQ = 69; memory testing (WMS-IV) also demonstrating impairment, which supports diagnosis of mild mental retardation. Claimant also diagnosed with dysthymia appears reasonably supported as well.

(AR at p. 381). It appears that while Dr. Johansen was aware of the evaluation and testing performed by Dr. Mabee, he was not aware of the previous evaluation and testing performed by Dr. Gardner.

Dr. Martin, a clinical psychologist, testified there was some inconsistency between Dr. Gardner's evaluation and Dr. Mabee's evaluation in that Plaintiff reported to Dr. Gardner that she had some depressed moods on and off, but was not suicidal and did not indicate a history of suicide attempts, whereas she reported to Dr.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 11**

Mabee that she experienced more depression and had a history of suicide attempts. Suicide attempts and depression were also something Plaintiff reported to Community Health Associates of Spokane (CHAS) in May 2014. She also reported that she had been prescribed the anti-depressant Citalopram by her primary care physician. (AR at p. 44 and p. 385).

Dr. Martin testified that it was necessary to look at just more than IQ scores in regard to the diagnosis of mild mental retardation. She said it was also necessary to look at adaptive functioning and this was "a little bit difficult to assess" as there was not "any formal assessment or testing of adaptive functioning." (AR at p. 45). According to the doctor:

> We have her report of some mild difficulties there in terms of . . . she does not drive. She does have the documented difficulty in reading and math. And that would of course, impact her, although it sounds as if from the evaluations that she's able to perform her own hygiene, do some limited cooking and some household tasks. And she's able to ride the bus and use public transportation. So, I'm not sure that the adaptive functioning would fall into the range of mild mental retardation, but we also have some of those scores that are in the low average to average range.

(AR at pp. 45-46).

Dr. Martin noted the lower IQ score reported by Dr. Mabee as compared to the higher previous score reported by Dr. Gardner and Dr. Mabee's comment that usually the score is higher on the second test because of a "practice effect." In this case, however, the score reported by Dr. Mabee was lower, prompting Dr. Martin to speculate that this score "reflects an increased stress or something going on at that time," perhaps the recent break-up of a relationship. (AR at p. 46).

Dr. Martin indicated that in terms of daily living activities, she thought Plaintiff's limitations were "mild to moderate" because "it looks like she can do some household tasks, do her hygiene, use public transportation . . . ." (AR at p. 46). She indicated that moderate limitations would arise because of Plaintiff's issues with reading, writing and math, which she speculated might be the reason Plaintiff had not

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

obtained a driver's license (AR at p. 47), but as noted above, Plaintiff attributed this to her limited income.

Dr. Martin thought that while Plaintiff "might have more difficulty in public situations," she could "relate appropriately" and therefore, her limitation with regard to social functioning was "mild to moderate." (AR at p. 47). The doctor opined that with regard to concentration, persistence and pace, Plaintiff suffered a "moderate" limitation related to her "intellectual and memory difficulties." (AR at p. 47). Dr. Martin expressed her agreement with the limitations the ALJ ultimately incorporated into her RFC assessment as set forth above. (AR at pp. 49-50).

The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). In this case, Dr. Martin's opinion is supported by other evidence in the record and is consistent with it, in particular, Dr. Gardner's evaluation.

The ALJ gave some weight to Dr. Gardner's opinion, but found his statement that Plaintiff's avoidant patterns contribute to a decreased level of adaptive functioning was not supported by the record. (AR at p. 28). Notwithstanding his statement, Dr. Gardner found Plaintiff was able to make concrete adjustments to changes; was capable of independent travel; appeared able to attend to and persist in more concrete tasks; and was probably capable of rudimentary money management. Plaintiff told Dr. Gardner the reason she did not cook was because of difficulty reading recipes and the reason she did not drive was because of lack of income to afford a driver's education course. She also told the doctor she occasionally went places by herself. Dr. Gardner opined that Plaintiff's insight was "fair." In light of this, it is difficult to ascertain what Dr. Gardner actually meant by Plaintiff's avoidant patterns contributing to a decreased level of adaptive functioning. Accordingly, Dr.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

Martin's opinion that Plaintiff has "mild to moderate" limitations in terms of daily living activities and social functioning does not appear inconsistent with Dr. Gardner's assessment of Plaintiff's functional capabilities.[1] Dr. Gardner's assessment of Plaintiff's functional limitations (AR at p. 283) is not manifestly contrary to any of the limitations the ALJ incorporated in her RFC determination. It appears all of those limitations were incorporated into the ALJ's RFC determination. To the extent that may not be the case, the ALJ provided a specific and legitimate reason for discounting Dr. Gardner's statement that Plaintiff has a decreased level of adaptive functioning.

The ALJ gave little weight to the functional limitations opined by Dr. Mabee. (AR at pp. 28-29). She provided specific and legitimate reasons for doing so. Although Plaintiff's MMPI scores do not necessarily render invalid the WAIS-IV scores reported by Dr. Mabee, they nonetheless indicated an "over reporting of psychopathology" and an "exaggeration of her current psychological functioning." Psychological functioning includes an individual's behavior, emotion, social skills and overall mental health. Like Dr. Gardner, Dr. Mabee noted that Plaintiff had never received mental health counseling, had never been prescribed psychotropic medications, and had never been psychiatrically hospitalized. Plaintiff told Dr. Mabee she had attempted to harm herself and/or commit suicide numerous times, but she previously told Dr. Gardner she was not "seriously suicidal" and denied feelings of helplessness and hopelessness. That she was not "seriously suicidal" appears to be borne out by the CHAS records from May 2014 in which Plaintiff said that

---

[1] The court is not aware of a requirement for formal assessment of adaptive functioning. Revised Listing 12.05, effective January 17, 2017 (see n. 2 *infra*) specifically provides that "the results of an individually administered standardized test of adaptive functioning" is not required.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

although she thought daily about harming herself, she did not have any current plans to do so and previous wrist cutting attempts amounted to no more than "surface cuts." (AR at p. 385). Dr. Mabee did not know what Plaintiff had previously told Dr. Gardner, nor did Dr. Mabee know about Dr. Gardner's WAIS-IV scores. As discussed above, Dr. Mabee's WAIS-IV scores were not an "inflated" view of Plaintiff's cognitive abilities due to "practice effect" from Dr. Gardner's previous WAIS-IV assessment. And although Dr. Gardner indicated that Plaintiff's Full Scale IQ Estimate of 76 was "less meaningful due to variation across factors," he did not explain how "less meaningful" it was. Dr. Gardner thought Plaintiff "might benefit significantly from vocational rehabilitation services." Dr. Mabee went a step further and indicated that "vocational or training services would minimize or eliminate barriers to employment." Dr. Mabee also indicated that mental health counseling could improve coping skills and that medication might alleviate the severity of Plaintiff's psychological symptoms. It appears Plaintiff began taking Citalopram within months after Dr. Mabee's evaluation.

The ALJ gave little weight to Dr. Johansen's opinion (AR at p. 29) and that was appropriate as his opinion was based exclusively on a review of Dr. Mabee's opinion.

**SYMPTOM TESTIMONY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Among the reasons the ALJ provided in discounting Plaintiff's symptom testimony were statements she made to Dr. Gardner and the observations of her made by Dr. Gardner during his consultative examination. (AR at pp. 25-27). These are discussed above and they constitute "clear and convincing" reasons for discounting Plaintiff's testimony as to the severity of her mental health symptoms. Furthermore, Dr. Gardner's assessment of Plaintiff's functional limitations, as discussed *supra*, constitutes a "clear and convincing" reason for discounting Plaintiff's symptom testimony. As such, it is unnecessary to examine the validity of the other reasons the ALJ provided for discounting Plaintiff's symptom testimony.

///
///
///
///
///
///
///
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

**LISTING 12.05**[2]

Listing 12.05 for "Intellectual Disability" states as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full-scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or

---

[2] A revised Listing 12.05 for "Intellectual Disorder" became effective on January 17, 2017. 81 FR 66137 (Sept. 26, 2016). It applies to new applications filed on or after January 17, 2017, and to claims that are pending at the administrative level on or after January 17, 2017. The Social Security Administration (SSA) "anticipates" that federal courts will use the rules which were in effect when it rendered its final decision. 81 FR at 66138 and n. 1. Therefore, the prior Listing 12.05 for "Intellectual Disability" remains the applicable Listing in the captioned case.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 17**

      2. Marked difficulties in maintaining social functioning; or

      3. Marked difficulties in maintaining concentration, persistence or pace; or

      4. Repeated episodes of decompensation, each of extended duration.

The "A" and "B" criteria clearly are not met. On the WAIS-IV assessments administered by Dr. Gardner and Dr. Mabee, Plaintiff scored a 70 on the Verbal Comprehension Index. (AR at p. 282 and p. 371). This, however, does not appear to be the same as a Verbal IQ score which is a score derived from a WAIS-III assessment.[3] Plaintiff's Full Scale IQ Estimate from Dr. Mabee's WAIS-IV test was 69, but that estimate was validly called into question by Dr. Martin, as discussed above. That leaves Dr. Gardner's Full Scale IQ Estimate of 76 and therefore, the "C" and "D" criteria cannot be met.

Beyond that, although Plaintiff has "other mental impairment[s]" (e.g., developmental language disorder, depression and social anxiety), the "C" criteria are not met because she does not have an "**additional** and significant work-related limitation of function" arising specifically from those "other mental impairments" as opposed to functional limitations arising from her borderline intellectual functioning. (Emphasis added). And the "D" criteria are not met because, as discussed above, Plaintiff does not have any "marked" restrictions or difficulties and has suffered no "repeated episodes of decompensation."

The ALJ did not err in determining that Plaintiff's intellectual impairment did not meet or equal Listing 12.05. (AR at p. 23). Substantial evidence in the record supports that determination.

///

///

---

[3] http://www.sciencedirect.com/topics/neuroscience/wechsler-adult-intelligence-scale

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 18**

## CONCLUSION

The ALJ's mental RFC determination is supported by substantial evidence in the record. Therefore, she posed a proper and complete hypothetical to the VE pursuant to which the VE opined Plaintiff could perform jobs existing in significant numbers in the national economy. The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff is not disabled.

Defendant's Motion For Summary Judgment (ECF No. 20) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this __6th__ day of September, 2017.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 19**